UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60143-SMITH/VALLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GEORGE TERZADO,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE is before the Court upon Defendant George Terzado's ("Defendant") Motion for *Franks* Hearing (the "Motion") (ECF No. 37). United States District Judge Rodney Smith has referred the Motion to the undersigned for appropriate disposition. (ECF No. 38). In the Motion, Defendant argues that the law enforcement agent who submitted the affidavit in support of the warrant to search Defendant's residence made material misrepresentations and omissions of fact, requiring an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[1] *See generally* (ECF No. 37).

The United States ("Government") opposes the Motion, arguing that Defendant has failed to meet his burden of making a substantial preliminary showing that any misstatement and/or omission in the affidavit was intentional or reckless and would have vitiated the magistrate judge's probable cause determination if the false information was removed or the omitted information added. *See generally* (ECF No. 43).

---

[1] The challenged warrant led to the seizure of approximately 22 ounces of methamphetamine, 18 ounces of heroin, 13 ounces of cocaine, and 4.5 ounces of oxycodone, resulting in federal drug trafficking charges against Defendant. *See* (ECF No. 43 at 3-4).

Having reviewed the Motion, the Government's Response (ECF No. 43), Defendant's Reply (ECF No. 44), and being duly advised in the premises, the undersigned respectfully recommends that the Motion be **DENIED** for the reasons set forth below.

## I.     FACTUAL BACKGROUND

On April 27, 2021, the Government submitted an application, with a supporting affidavit, to Magistrate Judge Lurana Snow to search Defendant's residence.  *See* (ECF Nos. 37 at 1, 43 at 1); *see also* (ECF No. 55-1).   Based on the affidavit, the magistrate judge found probable cause to search the residence and issued the search warrant.   (ECF No. 51-1).   The affidavit contained a "Probable Cause" section that recounted information that the affiant had obtained from other agents, a cooperating defendant ("CD"), and others, including a confidential source ("CS").   *Id.* at 8-10.   In the Motion, Defendant challenges the veracity of the information included in Paragraphs 5, 6, 7, and 8 and the omission of certain facts from the affidavit.

## II.     THE MOTION

Defendant argues that the affiant included: (i) "demonstrably false" background information about the date of CD's arrest and the nature and length of CD's relationship with Defendant and with CD's co-defendants; and (ii) omitted "critical information" relevant to the probable cause finding and CD's and CS's credibility and reliability.   (ECF No. 37 at 2, 13). Among the purported "critical omissions" that Defendant claims are material to CD's and CS's credibility are a fuller recitation of CD's extensive criminal history and specifics of his involvement in a drug trafficking organization, the "substantial benefits" that CD and CS received for their cooperation against Defendant, and the lack of corroborating evidence (such as reports of interviews, photographs, or recordings) for some of CD's statements and observations about Defendant that were included in the affidavit.   *See generally* (ECF Nos. 37, 44).   In addition,

2

Defendant argues that the affiant intentionally misled the Court as to the "real focus" of the underlying investigation against Defendant by not disclosing that the true purpose of the April 13, 2021 meeting between CD and Defendant was to investigate Defendant's suspected involvement in the unsolved murder of a DEA confidential informant. (ECF No. 44 at 2). According to Defendant, these "mistakes, omissions, and misrepresentations in the warrant are the result of the [affiant's] intent not to reveal the true nature of the investigation in the warrant and instead, to attempt to present an ongoing drug investigation that did not exist." *Id.* 44 at 18.

In Response, the Government acknowledges that Paragraph 5 of the affidavit incorrectly stated that CD was arrested in November 2020, when the correct date of CD's arrest was February 2021. (ECF No. 43 at 7). Nonetheless, the Government argues that this error was "inconsequential" to the magistrate judge's probable cause finding. *Id*. In addition, the Government asserts that Defendant has not made the necessary substantial preliminary showing that the affiant intentionally or recklessly included false statements or omitted material information in the affidavit. *Id*. at 5-12. Moreover, the Government argues that even if Defendant has made the requisite substantial preliminary showing that the affiant intentionally or recklessly made false statements or omitted material information, the affidavit still contains sufficient information (with any inaccuracies stricken and omitted information added) to establish probable cause for the search warrant. *Id*. at 12-13.

### III.   LEGAL STANDARD

In *Franks v. Delaware* the Supreme Court held that where: (i) a defendant makes a substantial preliminary showing that an affiant knowingly and intentionally included a false statement in an affidavit or made the false statement with reckless disregard of its truth, and (ii) the false statement was necessary to the finding of probable cause, then a hearing on the affidavit must

3

be held at the defendant's request. 438 U.S. at 155-56. Both prongs must be satisfied to warrant a hearing. *U.S. v. Hanna*, No. 12-CR-20254, 2012 WL 4372061, at *5 (S. D. Fla. Sept. 12, 2012). Relevant here, *Franks* also applies to material omissions of fact. *U.S. v. Batiste,* No. 06-CR-20373, 2007 WL 2412837, *20 (S.D. Fla. Aug. 21, 2007); *Madiwale v. Savaiko*, 117 F. 3d 1321, 1327 (11th Cir. 1997).

The substantiality requirement in *Franks* is not lightly met. *U.S. v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) (citations omitted). Rather, there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. Thus, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v.*, 117 F.3d at 1327. As the Court in *Franks* explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

438 U.S. at 171. Defendant's arguments are addressed below.

## IV.    ANALYSIS

### A.    Alleged Falsehoods and Factual Omissions in the Affidavit

*1.    Paragraph 5 of the Affidavit*

Paragraph 5 of the affidavit states:

In or around February 2021, law enforcement conducted an interview of a cooperating defendant ("CD").[1] During the interview, the CD provided law enforcement with information pertaining to George Terzado. The CD advised that, prior to his/her arrest in November 2020, the CD had supplied Terzado with multi-kilogram quantities of heroin, fentanyl, and methamphetamine.

Footnote 1 to Paragraph 5 adds:

The CD and three other individuals are facing active federal drug trafficking charges. To date, the CD has proven to be truthful and reliable in his/her interactions with your Affiant. During a debrief of two of the other cooperators, they advised that they had delivered controlled substances to Terzado at CD's direction prior to their arrest.

(ECF No. 55-1 at 8).

Defendant raises two challenges to Paragraph 5.    First, Defendant argues that the date of CD's arrest and the time during which CD and his/her co-defendants provided drugs to Defendant is demonstrably false.    (ECF No. 37 at 4, 13).    According to Defendant, the error in the date of CD's arrest created a false narrative about the relationship between CD, his co-defendants, and Defendant.    (ECF Nos. 37 at 4, 44 at 6-7).    Second, as to footnote 1 to Paragraph 5 regarding the sale of drugs by the other cooperators to Defendant, Defendant argues that "[t]his does not appear to [be] truthful and accurate information" because "[t]here is no indication in the available reports and discovery that the Defendant appeared in the [other cooperators' drug] ledger [seized] by the DEA [in the case against CD and his/her co-defendants]."    (ECF No. 37 at 5).    Thus, Defendant adds that "the historical information at paragraph 5 . . . claiming that Defendant was a customer of the DTO appears to be inaccurate."    *Id.*

5

The undersigned finds Defendant's arguments unpersuasive. Case law is clear that a negligent, insignificant, or immaterial misrepresentation in an affidavit is insufficient to invalidate a warrant. *See U.S. v. Maharaj*, No. 07-CR-80024, 2007 WL 2254559, at *7 (S.D. Fla. Aug. 2, 2007); *Batiste,* 2007 WL 2412837, at *20. Rather, *Franks* requires that Defendant's attack be supported by an offer of proof or other evidence. *Franks*, 438 U.S. at 171. Here, however, Defendant has not provided any offer of proof, affidavit or other sworn statement to support his allegation that the affiant intentionally or recklessly misrepresented the date of CD's arrest. *See U.S. v. Gray*, No. 10-CR-20410, 2011 WL 4368920, at *3 (S.D. Fla. May 13, 2011) (denying defendant's motion to suppress for *Franks* violation because, among other things, defendant did not provide any offer of proof to support the facts he proffered to the Court). Nor is the Court persuaded that the date of CD's arrest is material or necessary to the magistrate judge's finding of probable cause. Contrary to Defendant's argument, if the erroneous arrest date were deleted from the affidavit, probable cause remains unaffected.

Defendant's argument that the information in footnote 1 to Paragraph 5 "does not appear to be truthful and accurate" fails for the same reason. Simply put, Defendant has not provided any support for this allegation. Rather, Defendant summarily states that the information "appears to be inaccurate." But Defendant's unsupported assertion that these events did not occur because they are not memorialized in an investigative report or other discovery, *see* (ECF No. 37 at 5), without more, is insufficient to warrant a *Franks* hearing. *See U.S. v*. *Padilla*, No. 04-CR-60001, 2007 WL 188146, at *2 (S.D. Fla. Jan. 22, 2007) ("[i]n order to mandate a *Franks* hearing, the [d]efendant's allegations must be 'more than conclusory and must be supported by more than a mere desire to cross-examine.'"); *U.S. v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983), *cert.*

*denied*, 464 U.S. 1069 (1984) (denying *Franks* motion to suppress where motion contained only conclusory unsupported allegations).

Lastly, Paragraph 5 and footnote 1 of the affidavit clearly stated that CD and his co-defendants had historically supplied multikilogram quantities of drugs to Defendant, thus putting the magistrate judge on notice of the previous buyer/seller role and reversal of these roles during the April 21, 2021 transaction. *See* (ECF No. 51-1 at 8). Although Defendant may understandably want more specificity in the affidavit on this point, *Franks* does not require it. *U.S. v. Taylor*, No. 14-CR-0303, 2015 WL 5923580, at *4 (S.D. Ga. Oct. 12, 2015) (noting that technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in the *Franks* arena, "particularly where . . . it was implicit on the face of the affidavit that the informant was in legal trouble and was cooperating in an attempt to mitigate the likely punishment.").

   2. *Paragraph 6 of the Affidavit*

Defendant raises several challenges to Paragraph 6 of the affidavit, which states:

> On or about April 13, 2021, the CD and a confidential source (CS) met with Terzado at the Target Premises, known to be Terzado's residence. Prior to meeting with Terzado, law enforcement equipped the CD with an audio recording device. Law enforcement observed the CD enter the Target Premises. While inside, the CD observed various types and amounts of narcotics. Based on the CD's description of the quantity and/or packaging of the suspect narcotics, Terzado's possession of them was consistent with an intent to distribute, rather than for personal consumption. Following this meeting, law enforcement directed the CD to ascertain if he/she could purchase a pound of methamphetamine from Terzado.

(ECF No. 55-1 at 9).

Defendant argues that the affiant failed to disclose that the "CS" referenced in Paragraph 6 was in fact CD's girlfriend, who had purportedly assisted CD to try to leave the country to avoid

7

prosecution and "is believed" to have contacted Defendant to obtain bond money for CD.[2] (ECF No. 37 at 7). Next, Defendant contends that there are no photos or videos to corroborate CD's observation of the "various types and amounts of narcotics" mentioned in Paragraph 6.[3] *Id*. In addition, Defendant argues that "it appears [that] there was $20,000 provided to CD by Defendant" during this meeting (because Defendant, CD, and CS can be heard counting money in the audio recording of the meeting), yet there is no mention of that in the affidavit and "there is no indication that law enforcement addressed the issue of what the money was for or whether CD kept it." *Id.* at 8*; see also* (ECF No. 44 at 13-14)*.*  Lastly, Defendant argues that Paragraph 6 was intended to mislead the magistrate judge as to the true nature of the investigation in that the Government has admitted (in its Response to the Motion) to making a tactical decision to omit the details of the murder investigation into Defendant from the drug trafficking search warrant application. (ECF No. 44 at 2). Thus, Defendant argues that "the drug related investigation was merely a 'front' to hide the murder related investigation," which amounts to an intentional misrepresentation to the magistrate judge. *Id*.

Notwithstanding the facial appeal of these allegations, a criminal defendant is not entitled to a *Franks* hearing unless he can show that the alleged misrepresentation or omission in the search warrant affidavit was not only intentional or reckless, but also material to a finding of probable cause. Here, Defendant has shown neither. First, Defendant has not made a substantial preliminary showing that the affiant intentionally or recklessly made false statements or omissions in Paragraph 6. *See Alan v. Tyz*, No. 08-CV-80935, 2010 WL 11602741, at *4 (S.D. Fla. Jan. 14,

---

[2] The undersigned will address CS's credibility and relation to CD below. *See* section IV.B, *infra*.

[3] This argument is unpersuasive, as Defendant's challenge to the lack of corroboration goes to the weight of the evidence, which Defendant can address through vigorous cross-examination.

2010) (search warrant affidavits do not need to be perfect, nor do they have to provide every specific piece of information); *U.S. v. Aisenberg*, 247 F. Supp. 2d 1272, 1331 (M.D. Fla. 2003) ("an affiant cannot be expected to include in an affidavit every piece of information gathered during the course of an investigation."). Second, even assuming that Defendant satisfied this first prong of *Franks*, Defendant has nonetheless failed to establish the materiality of the omitted information, including, for example, the materiality of the murder investigation or the purportedly undisclosed and uninvestigated transfer of cash on April 13, 2021. *See Hanna,* 2012 WL 4372061, at *5 (noting that materiality is essential in the context of *Franks* analysis) (citing to *U.S. v. Burston*, 159 F.3d 1328, 1333 (11th Cir. 1998) ("[t]o attack the veracity of a warrant affidavit, a defendant must make a preliminary showing that the affiant made intentional misstatements or omissions . . . that were essential to the finding of probable cause.")).

Here, the murder investigation was not relevant (and might have been unduly prejudicial) to the magistrate judge's probable cause determination on the warrant to search Defendant's residence for drugs. In this context, the Government's decision to omit the unrelated murder investigation from the drug trafficking warrant was reasonable. *See, e.g.*, *U.S. v. Umansky*, 291 F. App'x 227, 228 (11th Cir. 2008) (finding that the affiant had reasonable justifications for his inclusion or exclusion of certain facts in the search warrant affidavit). As to the purportedly undisclosed cash transfer, assuming that the recording of the April 13 meeting supports Defendant's allegation that Defendant, CD, and CS can be heard counting money, there is no evidence that Defendant actually paid CD during the meeting (an allegation that the Government denies), as a payment on a possible pre-existing drug debt. Defendant asserts that this omission is relevant to CD's credibility and reliability. (ECF Nos. 37 at 10, 44 at 15). But Defendant offers only speculation that this may have been a payment to CD on an existing drug debt, without

9

evidence to corroborate this theory of the case. Under these circumstances, the undersigned concludes that excising the purported falsehoods and adding the omitted information to the affidavit would not vitiate the magistrate judge's finding that probable cause existed to search Defendant's residence for drugs.

### 3. *Paragraph 7 of the Affidavit*

Defendant's challenge to Paragraph 7 likewise fails. Paragraph 7 states:

> On or about April 19, 2021, the CD placed [an unrecorded] cal1 to Terzado. During the phone call, Terzado advised that he had a pound of methamphetamine at the Target Premises and could sell it to the CD for six thousand five hundred dollars ($6,500.00).

(ECF No. 55-1 at 9).

As to Paragraph 7, Defendant states that "[i]t is not clear who chose not to record the call, or why it was not recorded," adding that Paragraph 7 is contrary to the previously existing buyer/seller relationship between CD and Defendant, as described in Paragraph 5 and footnote 1 of the affidavit. (ECF No. 37 at 9). This cursory challenge, however, falls far short of the required substantial preliminary showing required by *Franks*. Moreover, footnote 1 to Paragraph 5 clearly apprised the magistrate judge of the parties' past dealer/seller relationship. Lastly, Paragraph 7 is corroborated by the April 21, 2021 transaction (described in Paragraph 8), where Defendant sold one pound of methamphetamine in exchange for $6,500. *See* (ECF No. 55-1 at 9-10). The veracity of the unrecorded conversation described in Paragraph 7 is supported by the drug sale that followed.

### 4. *Paragraph 8 of the Affidavit*

Paragraph 8 of the affidavit states:

> On or about April 21, 2021, at approximately 5:30 p.m., the CD placed a recorded call to Terzado at which time Terzado confirmed that he had the methamphetamine. The CD told Terzado that he/she would meet him later that evening. At approximately 7:00 p.m., law

> enforcement conducted surveillance of the Target Premises. Your Affiant met with the CD and CS at a location near the Target Premises. At this time, your Affiant searched the CD's person and the CS' person, as well as their vehicle. Both were free of any contraband. Law enforcement equipped CD and CS with covert audio recording devices and provided $6,500.00 in Official Investigative Funds (OIF). The CD and CS departed the meeting location in their vehicle. Law enforcement kept CD and CS under continuous, uninterrupted surveillance as they drove to the Target Premises. They did not make any stops or come into contact with anyone along the way. At approximately 7:26 p.m., the CD and CS arrived at the Target Premises. Law enforcement observed the CD and the CS enter the Target Premises at which time the CD began conversing with Terzado. The CD gave $6,500.00 to Terzado in exchange for approximately one pound of suspected methamphetamine. A short time later, the CD and the CS exited the Target Premises and reentered their vehicle before departing the area. Law enforcement kept the CD and the CS under continuous surveillance as they drove to the predetermined meeting location. The CD and the CS did not make any stops or come into contact with any persons along the way. Once at the meeting location, your Affiant took possession of the suspected methamphetamine, which subsequently field tested positive for the presence of methamphetamine. During the debrief, the CD advised that, while he/she was inside the Target Premises, he/she observed approximately one (1) kilogram of heroin on the kitchen table.

(ECF No. 55-1 at 9-10).

Defendant argues that the information in Paragraph 8 "appears to have been the result of CD, at law enforcement's direction, and in unrecorded communications, causing the Defendant to seek out narcotics from another source of supply to pay a pre-existing debt owed to CD . . . . This would explain the bulk cash paid to CD [on April 13, 2022] without any exchange of narcotics, as well as CD's girlfriend seeking the Defendant's assistance with money for a bond or attorney for CD."  (ECF No. 37 at 9-10).  But, once again, appearances, unsupported suppositions, and defense theories of the case are an insufficient basis for a *Franks* hearing.  The best evidence of Defendant's sale of one pound of methamphetamine to CD is the audio recording containing Defendant's own words.  *See Batiste*, 2007 WL 2412837, at *22 (noting that evidence from taped conversations of a suspect "carries with it a great deal of reliability and constitutes the very type of corroboration" needed to establish probable cause).

### B. Omissions Regarding CD's and CS's Credibility and Reliability

In addition to the above challenges, Defendant argues that the affiant intentionally or recklessly failed to include critical facts concerning CD's and CS's credibility and reliability, which if included would have prevented a finding of probable cause.

*Franks* applies to material omissions of fact. *Batiste*, 2007 WL 2412837, at *20. Thus, the challenged omissions in the affidavit must have been made intentionally or with a reckless disregard for the accuracy of the affidavit. *Id.* Omissions are made with reckless disregard if the information omitted is the kind of information that a reasonable person would expect a judge to want to know. *Id.* Negligent or immaterial omissions, however, will not invalidate a warrant. *Id.* If a defendant establishes that there are material omissions in a search warrant affidavit, the Court must then determine whether, if the omitted information were included in the affidavit, sufficient content would still exist to support a probable cause finding. *Id.* If the answer is yes, then no hearing is required. *Id.*

For the reasons discussed below, the undersigned finds that the purported omissions in the affidavit do not necessitate a *Franks* hearing.

#### 1. Omissions Pertaining to CD

With respect to CD, Defendant argues that the affidavit omitted mention of: (i) the substantial benefits that CD received for cooperating against Defendant (including being released on bond and benefitting from a more lenient charging decision on drug quantities and a firearms offense); (ii) CD's extensive criminal history and specifics of his involvement in the drug trafficking organization; (iii) the April 13, 2021 purported unexplained cash transfer from Defendant to CD (previously addressed, *see* section IV.A.2, *supra*); and (iv) the apparent reversal

of CD's and Defendant's role as dealer/seller (previously addressed, *see* section IV.A.1, *supra*). *See generally* (ECF No. 37 at 5-6). The arguments not previously addressed are discussed below.

Defendant first argues that the affiant failed to disclose the substantial benefits that CD received for his cooperation with law enforcement, including release on bond and benefitting from more lenient charging decisions. *Id.* But alerting the magistrate judge to CD's bond status and to the fact that he was or was not subsequently charged with certain offenses, would not have obviated the magistrate judge's probable case determination.[4] *See Batiste*, 2007 WL 2412837, at *23 (noting that once the court was made aware that the confidential witness was a paid informant, it was irrelevant that the witness received other benefits in the form of immigration considerations).

Defendant's argument regarding the omission of CD's prior criminal record and specifics of his role in the drug trafficking organization fails for the same reasons. Specifically, Defendant argues that the affiant should have disclosed that: (i) CD had a prior drug conviction that placed him at risk of enhanced prosecution in his underlying drug case; (ii) CD was charged as the head of a drug trafficking organization; (iii) CD had attempted to flee the country with CS while carrying a large sum of money; and (iv) the drug ledger seized from CD's co-defendants in the underlying drug case against CD did not list Defendant as a customer (purportedly contradicting CD's and his co-defendants' allegations in Paragraph 5 and footnote 1 that they had sold drugs to Defendant in the past). (ECF Nos. 37 at 5, 13-14, 44 at 7-8, 10, 11). Despite these omissions, however, the affidavit sufficiently advised the magistrate judge that CD was facing federal drug trafficking

---

[4] Notably, the charging decisions of which Defendant complains post-date the magistrate judge's probable cause finding and issuance of the search warrant, and thus cannot form a basis for a *Franks* hearing. *See* (ECF No. 43 at 7-9).

charges.  (ECF No. 55-1 at 8 n.1).  The specifics of CD's prior criminal record, leadership role in the drug organization, or the facts leading up to his arrest, would not have changed the magistrate judge's probable cause finding on the drug warrant.  *See Taylor*, 2015 WL 5923580, at *4 (noting that search warrant affidavit need not recite a detailed dossier of confidential informant's background, character, criminal charges, and motivations).  Rather, "where unsavory information relating to the background of an informant was omitted from an affidavit, the warrant [is] still valid due in part to the firsthand character of the statements coupled with independent corroboration of the information," by another person or, as here, taped conversations.  *Haimowitz*, 706 F.2d at 1557.  Additionally, any impeachment evidence resulting from the absence of Defendant's name in the drug ledger serves to impeach CD, not the affiant.  *U.S. v. Kilgro*, 232 F. Supp. 3d 1184, 1191 (N.D. Ala. Feb. 2, 2017).

### 2. *Omissions Pertaining to CS*

With respect to CS, Defendant argues that the affidavit omitted: (i) that CS was CD's girlfriend; (ii) the benefits that CS received for cooperating with law enforcement, including not being charged for attempting to help CD flee the country; (iii) CS's supposed request to Defendant to assist with bail money for CD; and (iv) that Defendant purportedly gifted CS a bottle of alcohol and a watch.  *See* (ECF Nos. 37 at 7, 10, 14-15, 44 at 10-11, 14-15).

Defendant asserts that these omissions undercut CS's credibility and reliability, which Defendant claims are "key" to the probable cause determination.  (ECF No. 37 at 14).  But CS's credibility and reliability are not relevant to the magistrate judge's probable cause determination. At best, CS plays a peripheral role in the affidavit.  *See generally* (ECF No. 55-1 at 8-10).  For example, the affidavit does not: (i) rely on any of CS's observations at Defendant's residence on April 13, 2021; (ii) refer to any recorded or unrecorded calls or conversations between CS and

Defendant; and (iii) allege that CS handled any official investigative funds. Indeed, if all mention of CS was removed from the affidavit, the magistrate judge's probable cause determination would stand unchanged. Thus, a *Franks* hearing is unwarranted.

## V.  RECOMMENDATION

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that Defendant's Motion for *Franks* Hearing (ECF No. 37) be **DENIED**.

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2021); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on August 2, 2022.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
    All Counsel of Record